# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY F. MAGAZZU and : | |
| MICHELE MAGAZZU, h/w, : | |
| : | Civil Action No. |
| Plaintiffs, : | 08-cv-2078 (NLH)(KMW) |
| : | |
| v. : | **OPINION** |
| : | |
| VOLMAR SERVICES, INC., GMT : | |
| CONTRACTING, CORP., JOHN DOES : | |
| 1 and 2, fictitious names of : | |
| unknown individuals, and ABC : | |
| and XYZ, fictitious names of : | |
| unknown corporations or other : | |
| entities, : | |
| : | |
| Defendants, : | |
| : | |
| v. : | |
| : | |
| DOUGHERTY CONTRACTING : | |
| COMPANY, : | |
| : | |
| Third-Party : | |
| Defendant. : | |

**<u>APPEARANCES</u>:**

REGINA MARY FOLEY
Raynes McCarty
116 White Horse Pike
Haddon Heights, NJ 08035
*Attorney for Plaintiffs Anthony F. Magazzu and Michele Magazzu*

JOHN J. DELANY, III
Delany & O'Brien
161 North Broad Street
Woodbury, NJ 08096
*Attorney for Defendant/Third-party Plaintiff Volmar Services, Inc. and Defendant GMC Contracting Corp.*

ROBERT BENNETT
Tesser & Cohen
946 Main Street

Hackensack, NJ 07601
*Attorney for Defendant GMC Contracting Corp.*

LINTON W. TURNER, JR.
Crawshaw, Mayfield, Turner, O'Mara, Donnelly & McBride
2201 Route 38
Suite 300
Cherry Hill, NJ 08002
      and
THEODORE E. BAKER
Baker, Krell, Haag & Bertram, L.L.C.
56 Fayette Street
P.O. Box 257
Bridgeton, NJ 08302
*Attorneys for Third-party Defendant Dougherty Contracting Company*

**<u>HILLMAN, District Judge</u>**

Plaintiff, Anthony F. Magazzu, suffered severe personal injuries as a result of a work-related accident that occurred while performing roofing services at Fort Dix military base in Fort Dix, New Jersey.  Magazzu was employed by third-party defendant, Dougherty Contracting Company ("Dougherty"), who worked at Fort Dix as a subcontractor for defendant/third-party plaintiff, Volmar Services, Inc. ("Volmar").  Magazzu and his wife, Michele Magazzu, filed a complaint in this Court against Volmar and defendant, GMT Contracting Corporation ("GMT"), a general contractor of roofing work performed at Fort Dix and to whom Volmar served as a subcontractor.

Volmar, in turn, filed a third-party complaint against Dougherty, alleging, among other causes of action, that Dougherty contractually agreed to indemnify Volmar.  In response, Dougherty filed a Motion for Summary Judgment, arguing that the

2

indemnification agreement between the parties is unenforceable in relation to Magazzu's accident and, alternatively, that any indemnity claim asserted by Volmar against Dougherty should be adjudicated in a trial separate from Magazzu's claims against Volmar and GMT.

For the reasons expressed below, Dougherty's Motion for Summary Judgment against Volmar's claim for contractual defense and indemnification is denied and Dougherty's motion requesting separate trials is granted.

## I.   JURISDICTION

This Court exercises subject matter jurisdiction over the underlying claim pursuant to 28 U.S.C. § 1332.  There is complete diversity between plaintiffs and defendants in the underlying action.[1]  Plaintiffs, Anthony and Michele Magazzu, are individuals who reside in Philadelphia, Pennsylvania and are citizens of the Commonwealth of Pennsylvania.  Defendant, Volmar, is incorporated in the State of New Jersey with its principal place of business in Wrightstown, New Jersey.  Defendant, GMT, is

---

[1]   Under Fed. R. Civ. P. 14, it is not required that diversity of citizenship exist between the third-party defendant and the plaintiff, or that diversity of citizenship exist between the defendant, as third-party plaintiff, and the third-party defendant.  See Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 169 (3d Cir. 1999) (stating that "a third-party defendant joined under Federal Rule of Civil Procedure 14 does not become a defendant as against the original plaintiff, so that federal jurisdiction is not destroyed where those parties are citizens of the same state"); In re Albert & Maguire Securities Co., 70 F.R.D. 361, 363 (E.D. Pa. 1976).

incorporated in the State of New Jersey with its principal place
of business in Jersey City, New Jersey.  Plaintiffs allege that
the amount in controversy exceeds $75,000.

## II.   BACKGROUND

In July 2007, Volmar entered into a "Purchase Order"
agreement with Dougherty.  The contract was drafted by a Volmar
project manager and was signed by representatives of both
parties.  In accordance with the contract, Dougherty agreed to
provide roofing services for a building at Fort Dix.  In
particular, Dougherty contracted to "[s]upply all supervision,
labor, material, equipment, and insurance to install a new GAF
built up roofing system over building 5952 in Fort Dix, NJ."  As
a subcontractor, Dougherty further agreed to "adhere to Volmar
Services Progress Schedule" and to "follow its Approved Quality
Control Plan as well as its Approved Safety Plan."  Dougherty
also assumed responsibility "for all property protection and
protection of the work area when performing work."

In addition, the Purchase Order required that Dougherty
maintain insurance, including commercial general liability
insurance and commercial umbrella or excess coverage, for which
Volmar was to be named a primary additional insured.  Moreover,
Paragraph 7 of the "General Provisions" of the Purchase Order
provided:

> To the fullest extent permitted by law, the
> Subcontractor shall defend, indemnify and hold

4

harmless the Contractor, the Contractor's
other Subcontractors, the Architect/Engineer,
the owner and their agents, consultants and
employees (the indemnities) from all claims
for bodily injury and property damage that may
arise from the performance of the Subcontract
work to the extent of the negligence
attributed to such acts or omissions by the
Subcontractor, the Subcontractor's
subcontractor or anyone employed directly or
indirectly by any of them or by anyone whose
acts any of them may be liable.

Pursuant to the parties' agreement, Dougherty began to
perform roofing work at the Fort Dix military base.  On September
26, 2007, Anthony Magazzu, a Dougherty employee, was performing
roofing work atop a building at Fort Dix when he fell
approximately thirty-five feet and suffered severe personal
injuries.  Brian Shuttleton, a Dougherty employee who acted as a
safety monitor for the rooftop work, testified at his deposition
that, before Magazzu fell, he warned Magazzu twice that he was
nearing the edge of the roof.  Magazzu denies that he heard any
such warnings from Shuttleton.[2]  Nevertheless, as a result of the
accident, Magazzu received workers' compensation benefits
furnished by Dougherty's workers' compensation carrier.

On April 28, 2008, Magazzu filed a complaint in this Court
against Volmar, alleging negligence and breach of contract and

---

[2]    Three other Dougherty employees were working on the
rooftop when Magazzu had his accident.  Richard Bartley, one of
those employees, testified that he heard Shuttleton's warnings.
The other two employees, James Magazzu, Anthony's brother, and
Frank Pantisano, Anthony's brother-in-law, testified that they
did not hear any warnings.

seeking more than $150,000 in damages.[3]  He later amended his
complaint, adding as a defendant GMT, the general contractor to
whom Volmer served as a subcontractor for the Fort Dix roofing
services.

In response to Magazzu's complaint, Volmar answered,
asserted cross-claims, and, in October 2008, impleaded Dougherty
into the action.  Against Dougherty Volmar alleged four counts:
(1) contractual defense and indemnification, (2) contribution,
(3) common law indemnification, and (4) negligence.  Ultimately,
Volmar and Dougherty stipulated to the dismissal, with prejudice,
of all counts except for that alleging contractual defense and
indemnification.  In May 2009, Volmar sought to amend its third-
party complaint against Dougherty to add a claim for breach of
contract.  Pursuant to the Magistrate Judge's order issued in
October 2009, Volmar was granted leave to amend its complaint.
In the amended complaint, Volmar submits that Dougherty breached
its contract with Volmar by failing to name Volmar as a primary
additional insured under an umbrella or excess insurance policy.

Presently before this Court is Dougherty's Motion for
Summary Judgment against Volmar's third-party indemnity claim.

## III. DISCUSSION

### A.    Standard for Summary Judgment

---

[3]    Michele Magazzu, Anthony's wife, also is named as a
plaintiff in this suit.  She seeks damages for loss of
consortium.

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.

Id. at 324.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### B.    Contractual Indemnification

Dougherty argues that, given principles of contract interpretation and the presumption against such provisions, the indemnification clause in the Purchase Order is ambiguous and insufficient to require Dougherty to indemnify Volmar for any negligence committed by Dougherty or its employees that may have injured a Dougherty employee, such as Magazzu.  To demonstrate that the parties did not intend such indemnification, Dougherty points out that it already has provided insurance coverage to Volmar and that Volmar did not include in the Purchase Order more particularized language that was known and available to it to account for this contingency.  Moreover, Dougherty submits that, absent a clear and express agreement, it cannot be held liable for its alleged negligence because the Workers' Compensation Act, N.J.S.A. 34:15-1 et seq., is the sole remedy for employees against their employers and bars any actions by employees or third parties against employers.

Volmar counters that, consistent with New Jersey case law, the parties' indemnification clause is clear and unambiguous in directing Dougherty to indemnify Volmar for any injuries caused by Dougherty's own negligence –- even injuries to Dougherty's own employees.  Dougherty must indemnify Volmar, it concludes, because a negligent Dougherty employee is responsible for Magazzu's injury and, as part of the Purchase Order, Dougherty agreed to supervise the rooftop work site and to ensure the safety of its workers.

The Workers' Compensation Act ("Act"), generally, shields an employer accused of negligence from any claims by its employee. See, e.g., N.J.S.A. 34:15-8 (stating that the agreement to workers' compensation "shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided" by the Act); Mull v. Zeta Consumer Prods., 823 A.2d 782, 783 (N.J. 2003) (noting that the Act "provides the exclusive remedy for claims against an employer when a worker is injured on the job"); Ramos v. Browning Ferris Indus. of South Jersey, Inc., 510 A.2d 1152, 1155 (N.J. 1986) (noting that the "Act is built upon the principle that it provides the exclusive remedy against the employer for a work-related injury sustained by an employee" and "that by accepting the benefits provided by its schedule of payments, the employee agrees to foresake a tort action against

9

the employer"). In addition, the Act, generally, precludes a third-party tortfeasor from pursuing contribution against the employer for injuries suffered to an employee. See Ramos, 510 A.2d at 1155 (noting that the Act "removes the employer from the operation of the Joint Tortfeasors Contribution Law," and "a third-party tortfeasor may not obtain contribution from an employer, no matter what may be the comparative negligence of the third party and the employer"). However, both Dougherty and Volmar recognize that, notwithstanding the Act, parties may enter into enforceable indemnification agreements.

An employer may contractually assume the duty to indemnify a third party through an express and unambiguous agreement. Id. at 1159; see Slater v. Skyhawk Transp., Inc., 77 F. Supp. 2d 580, 586 (D.N.J. 1999) ("[A] third party may obtain indemnification from an employer in an instance where an employer has expressly agreed to indemnify the third party."). When interpreting indemnity contracts, a court is to employ "the rules governing the construction of contracts generally," Ramos, 510 A.2d at 1159, and should seek to ascertain the parties' intentions, Mantilla v. NC Mall Assocs., 770 A.2d 1144, 1150-51 (N.J. 2001). "When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee." Ramos, 510 A.2d at 1159.

The relevant provision at issue in this case, Paragraph 7 of

10

the parties' Purchase Order, expressly and unambiguously states that "the Subcontractor [Dougherty] shall defend, indemnify and hold harmless the Contractor [Volmar], . . . from all claims for bodily injury and property damage that may arise from the performance of the Subcontractor work to the extent of the negligence attributed to such acts or omissions by the Subcontractor, . . . or anyone employed directly or indirectly by any of them . . . ." Although this provision may feature some grammatical errors, it unequivocally requires Dougherty to "defend, indemnify and hold harmless" Volmar for any tort claims arising from Dougherty's performance of its work "to the extent" that any "negligence" may be "attributed to such acts or omissions by" Dougherty or its employees. Based on the plain language of this provision, Dougherty must indemnify Volmar for any injuries resulting from Dougherty's negligence or the negligence of Dougherty's employees in performing their work.

Dougherty attempts to undermine the indemnification clause's clarity by underscoring that the clause does not specify that it must indemnify for claims made by its own employees and, thus, does not explicitly circumvent the Workers' Compensation Act's protection afforded to employers. In other words, by Dougherty's assessment, the clause is ambiguous because it may simply require Dougherty to indemnify Volmar for Dougherty's negligent acts which cause harm to individuals other than its own employees,

such as the employees of the general contractor and the primary subcontractor or members of the general public.

Although the indemnification clause must be strictly construed against Volmar, and in spite of Dougherty's contention, the Court finds that the clause is clear, unambiguous, and enforceable.  The clause clearly sets forth Dougherty's intention to indemnify Volmar for "all claims for bodily injury" arising from Dougherty's negligence, which, on its face, would include a claim of negligence asserted by one of Dougherty's employees.  By including such an express and unambiguous indemnification clause, Dougherty and Volmar have circumvented any impediment that the Act may have imposed upon Volmar's indemnity claim.  See Ramos, 510 A.2d at 1159 ("[I]ndemnification of a third party by an employer pursuant to an express contract does not disturb the delicate balance struck by the Legislature in the Workers' Compensation Act.  Nothing in the Act precludes an employer from assuming a contractual duty to indemnify a third party through an express agreement.").

Volmar's indemnity claim does not fail merely because the Purchase Order does not independently highlight Dougherty's indemnification obligation for injuries suffered by its own employees notwithstanding the Act.  The Supreme Court of New Jersey has not created a categorical rule requiring such heightened specificity in indemnification clauses in relation to

the Act.  On the contrary, the prohibition against broad
indemnification clauses involving employers focuses not on
whether the clause expressly covers claims asserted by employees
but whether the clause expressly declares the employer's
intention to indemnify the third party for its own negligence.[4]
See, e.g., Carpenter v. Jersey Shore Univ. Med. Ctr., 2009 U.S.
Dist. LEXIS 29838, at **11-12 (D.N.J. Apr. 7, 2009) (noting that
"the New Jersey Workers' Compensation Act does not bar a contract
right of indemnification from the employer" but that the
presumption against indemnifying an indemnitee for its own
negligence may be overcome only by plain language expressly
stating otherwise); see also Azurak v. Corp. Prop. Investors, 814
A.2d 600, 601 (N.J. 2003) (rejecting the proposition that
"'broad'" indemnification clauses provide "a way to include an
indemnitee's negligence within an indemnification agreement

---

        [4]    In support of its argument that an express and
unequivocal statement of intent is necessary to circumvent the
Act's general bar against employer contribution or
indemnification, Dougherty relies, in part, on the unpublished
opinion in Selby v. New Carson Hills L.P., Docket No. A-3105-07T2
(N.J. App. Div. Mar. 2, 2009).  Although Selby carries no
precedential value, see R. 1:36-3, it also is readily
distinguishable from the present matter.  In Selby, the
indemnitee sought indemnification for its own negligence even
though, in direct contravention of Ramos, the indemnification
clause did not expressly reference losses resulting from the
indemnitee's negligence.  Id. at *3.  In this case, Volmar does
not seek indemnification for its own negligence but, rather, the
negligence of Dougherty and or its employees.  Thus, there is no
impediment to Volmar's indemnity claim predicated on the
negligence of Dougherty or its employees.

without explicitly referring to the indemnitee's 'negligence' or 'fault'"); Mantilla, 770 A.2d at 1149 (noting that "there is a presumption against indemnifying an indemnitee for its own negligence that can be rebutted only by plain language clearly expressing a contrary intent"); Ramos, 510 A.2d at 1159 ("[A] contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms."); Serpa v. N.J. Transit, 951 A.2d 208, 213 (N.J. App. Div. 2008) ("An indemnification agreement will not be construed to provide indemnification to a party for that party's own negligence unless the indemnification clause expressly states that it does."). In this case, the indemnification clause expressly and unambiguously pronounces Dougherty's intention to indemnify Volmar for any claims arising from Dougherty's own negligence, without any regard to the individuals bringing forth the claims.[5]  That the clause does not reference injuries suffered to Dougherty's employees or the Act itself is not fatal to Volmar's indemnity

---

[5]      Dougherty contends that the indemnification clause's opening phrase, "To the fullest extent permitted by law," precludes the clause's applicability here because the Workers' Compensation Act immunizes employers from suits by employees and third-party tortfeasors.  However, as explained above, an employer may contractually circumvent the Act and indemnify another party for injuries caused to an employee.  See, e.g., Ramos, 510 A.2d at 1159.  Therefore, by its plain meaning, the phrase, "To the fullest extent permitted by law," should not curtail the clause's application.

claim.[6]

Dougherty points out that as illustrated in its contract with GMT and in Ryan v. United States, 233 F. Supp. 2d 668 (D.N.J. 2002), Volmar has utilized in the past a complementary provision as part of its indemnification clause specifying that in any claim asserted by an employee, the employer's indemnification obligation will not be limited by a limitation on the amount or type of damages, compensation, or benefits payable by or for the employer under any applicable workers' compensation acts.  The absence of a similar complementary provision in the present agreement, Dougherty asserts, illustrates that the parties did not intend for Dougherty to indemnify Volmar for injuries suffered by Dougherty's employees.  While the addition of such a provision would further elucidate the parties' intent and would help to avoid disputes, its absence does not render an express and otherwise unambiguous indemnification clause unenforceable.  Accordingly, the Court does not find the absence of a similar complementary provision dispositive here.[7]

---

[6]     As Volmar points out, the indemnification clause at issue in Ramos did not expressly reference indemnification for injuries to the indemnitor's employees notwithstanding the Act, yet the New Jersey Supreme Court did not cite the absence of such specificity as a reason for not enforcing the clause.  See Ramos, 510 A.2d at 1154, 1160.

[7]     Further, Dougherty fails to demonstrate the invalidity of the indemnification clause merely because, as stipulated by the Purchase Order, Dougherty has provided general liability insurance to Volmar.  The parties' agreement that Dougherty must

Dougherty's Motion for Summary Judgment against Volmar's claim of contractual defense and indemnification is therefore denied.

### C.   Separate Trials

Alternatively, if Volmar's indemnity claim were to survive, Dougherty submits that a separate trial should be granted, pursuant to Fed. R. Civ. P. 42(b), to bifurcate Magazzu's claims against Volmar and GMT and Volmar's indemnity claim against Dougherty.  Dougherty seemingly warns that the inclusion of Volmar's indemnity claim during Magazzu's trial would prejudice Dougherty and confuse the jury because it may conflate Volmar and GMT's liability for allegedly failing to implement safety procedures with Dougherty's alleged negligence.  In furtherance of bifurcation, Dougherty posits that Volmar's indemnity claim may not even require adjudication if Volmar's potential liability is less than $1,000,000, the amount of insurance coverage procured by Dougherty on Volmar's behalf.

On the other hand, Volmar argues that a separate trial is inappropriate under these circumstances because it could result in inconsistent verdicts and would prove to be inconvenient, unnecessarily expensive, and a waste of time.  Volmar opines that one jury should decide the facts of this case, limiting any duplication of witnesses and testimony, and that the Court,

---

carry an insurance policy covering Volmar does not nullify Dougherty's clear intent to indemnify Volmar for Dougherty's own negligence.

thereafter, may rule on the indemnity claim as a matter of law.

Rule 42(b) provides:  "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial."  Fed. R. Civ. P. 42(b).  "The party seeking bifurcation has the burden of demonstrating that judicial economy would be promoted and that no party would be prejudiced by separate trials."  Princeton Biochem., Inc. v. Beckman Instruments, Inc., 180 F.R.D. 254, 256 (D.N.J. 1997); see Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield, Inc., 49 F. Supp. 2d 709, 721 (D.N.J. 1999) ("Because a single trial tends to lessen the delay, expense and inconvenience to all parties, the burden rests on the party seeking bifurcation to show that it is proper." (citation and internal quotation marks omitted)).  The decision to bifurcate and order separate trials, nevertheless, remains within the sound discretion of the district court.  Princeton Biochem., Inc., 180 F.R.D. at 256.  Further, the decision is fact-intensive and depends entirely on the specific circumstances of each case. Id.

Although no single factor is dispositive, when deciding whether to bifurcate, a court should consider whether: "(a) there will be overlap in testimony and evidence between the two

proceedings, (b) the issues to be decided at trial are complex and the factfinder is likely to become confused, (c) bifurcation will promote settlement, and (d) a single trial will cause unnecessary delay." Viking Yacht Co. v. Composites One LLC, 2008 U.S. Dist. LEXIS 101594, at **4-5 (D.N.J. Dec. 16, 2008) (citing Rodin Properties-Shore Mall, 49 F. Supp. 2d at 721).  Also relevant to the court's determination are the distinctions, if any, between the pertinent issues and the likelihood that either party will suffer prejudice if bifurcation is or is not granted. See BancMortgage Fin. Corp. v. Guarantee Title & Trust Co., 2000 U.S. Dist. LEXIS 15448, at *6 (E.D. Pa. Oct. 6, 2000).

The Court finds that Magazzu's claims against Volmar and GMT and Volmar's claims against Dougherty should be bifurcated.[8] First of all, to resolve Magazzu's case against Volmar and GMT, the jury will have to consider whether Volmar and GMT complied with obligations to implement and effectuate certain safety measures.  Those claims likely are distinct and independent from whether or not Dougherty or its employees fulfilled their own duties to ensure workplace safety and to act reasonably under the circumstances.  Cf. Williams v. CSX Transp., Inc., 2002 U.S. Dist. LEXIS 22448, at **5-6 (E.D. Pa. Nov. 15, 2002) (bifurcating employee's claims against defendants from defendants' third-party

---

[8]     It is worth noting that Volmar also asserts a claim for breach of contract against Dougherty.

claims and cross-claims against employer because the latter
claims "hinge on issues of indemnification, obligation to insure,
and contribution that are contingent upon the underlying claim of
negligence between Plaintiff and the Defendants" and because "the
issues of law are sufficiently separate and distinct and that the
proof for first party claims and the third party claims are
sufficiently different to warrant separate trials"). Although
there may be some overlap with regards to witnesses and evidence,
the duplication will not be so repetitive and burdensome as to
offset the benefits of bifurcated proceedings.

By allowing the jury to first address the alleged negligence
of Volmar and GMT, the Court will avoid any confusion as to the
parties' respective relationships and potential liabilities. See
Miller v. N.J. Transit Auth. Rail Operations, 160 F.R.D. 37, 42
(D.N.J. 1995) (separating indemnification portion of trial
because "[i]f it were tried with the issue of liability, the
issue of indemnification would certainly serve to confuse the
jury because not only would the jury have to determine which, if
any of the Defendants, are at fault, but also would have to
determine whether, and exactly how, the contract for indemnity is
applicable"). For purposes of suit, Dougherty is not a joint
tortfeasor. However, were Volmar's indemnity action against
Dougherty addressed at the same time as Magazzu's claims, the
jury's assessment of fault may be eschewed inappropriately by its

19

perception of Dougherty's role in the case.  Bifurcation will
minimize any such prejudice to the parties involved here.
Moreover, other courts have found bifurcation appropriate where
third-party indemnification is at issue.  See, e.g., McGuire v.
Bridgeport & Port Jefferson Steamboat Co., 2001 U.S. Dist. LEXIS
19753, at *3 (S.D.N.Y. Nov. 29, 2001) ("Other courts which have
addressed this scenario have bifurcated the trial on the
indemnification issue."); cf. Turner Constr. Co. v. Brian
Trematore Plumbing & Heating, Inc., 2009 U.S. Dist. LEXIS 92309,
at **13-14 (D.N.J. Oct. 5, 2009) ("Claims for contribution and
indemnification are severable under Rule 21 from the underlying
primary liability claims.").

Finally, depending on the jury's decision concerning
Magazzu's claims, the indemnity claim against Dougherty may be
altered or mooted altogether.  See In re Bayside Prison Litig.,
157 Fed. Appx. 545, 547-48 (3d Cir. 2005) (noting that
"bifurcation is appropriate where litigation of one issue . . .
may eliminate the need to litigate a second issue" (citation and
internal quotation marks omitted)); see also Williams, 2002 U.S.
Dist. LEXIS 22448, at *6 ("Although Defendants' success on
Plaintiff's claims will not make the Third Party claims
completely moot, disposition of Plaintiff's claim may change the
nature of the Third Party claims.").  Alternatively, even if the
indemnity claim persists and is unresolved after the adjudication

of Magazzu's claims, the Court, depending on the disposition of the case at that point, may be able to adjudicate the indemnity claim without the need for any further fact-finding.  See Miller, 160 F.R.D. at 42 (stating that "as a practical matter and depending upon the special interrogatories to be presented to the jury at the liability phase, the Court may, eventually, be in a position to determine the indemnification issue alone, as no factual issue may be left to determine").

Therefore, Dougherty's Motion for Summary Judgment requesting that the indemnity claim be bifurcated from Magazzu's claims against Volmar and GMT is granted.

**IV.   CONCLUSION**

For the foregoing reasons, Dougherty's Motion for Summary Judgment against Volmar's claim for contractual defense and indemnification is denied, and Dougherty's motion requesting separate trials is granted.  An Order consistent with this Opinion shall be entered.


DATED:   December 21, 2009          /s/ NOEL L. HILLMAN
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.